IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MIGUEL ANTONIO REYES,      )
                                 )
     Petitioner,           )
                                 )
v.                          )      Civil Action No.  3:20CV388–HEH
                                 )
COMMONWEALTH OF VIRGINIA,   )
                                 )
     Respondent.       )

## MEMORANDUM OPINION
### (Granting Motion to Dismiss)

Miguel Antonio Reyes, a Virginia state prisoner proceeding *pro se*, brings this

petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging his

robbery conviction and resulting eighteen-year active sentence in the Circuit Court of the

County of Fairfax, Virginia ("Circuit Court"). Reyes argues entitlement to relief based

upon the following:[1]

> Claim One:  "The trial court erred in denying the request of Petitioner Reyes's newly retained counsel . . . to continue the sentencing hearing." (*Id.* at 11.)

> Claim Two:  "Ineffective assistance of counsel." (*Id.* at 13.)

By Memorandum Opinion and Order entered on April 22, 2021, the Court granted

Respondent's Motion to Dismiss, in part, and dismissed Claim One. (ECF No. 20, at 1.)

The Court ordered a further response with respect to Claim Two. (*Id.*) The matter is

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to citations to the parties' submissions. The Court corrects the spelling and punctuation in quotations from Reyes's submissions. The Court also corrects the spelling in quotations from the state court record and corrects some errors in the state court transcripts.

before the Court on Respondent's Supplemental Brief in Support of Motion to Dismiss. ("Supplemental Motion to Dismiss," ECF No. 21.)  Reyes has filed a brief in opposition. ("Opposition," ECF No. 30.)[2]  For the reasons discussed below, Claim Two is barred from review here.

## I.      FACTUAL AND PROCEDURAL HISTORY

### A.     Guilty Plea and Sentencing

Reyes was charged with one count of robbery and one count of use of a firearm in the commission of a felony.  Indictment, *Commonwealth v. Reyes*, No. FE–2016–129 (Va. Cir. Ct. filed Feb. 16, 2016).  On February 23, 2016, Reyes entered an *Alford*[3] plea to one count of robbery.  (ECF No. 21–2, at 1.)  In exchange for his plea, the Commonwealth agreed to *nolle prosequi* the firearm charge.  (*See* ECF No. 21–11, at 1.) The Commonwealth also agreed that, in exchange for Reyes's plea, it would "not indict [Reyes] for another count of robbery."  (*Id.*)  However, Reyes "agree[d] to a restitution of $1,850 for this victim and the victim of the uncharged case."  (*Id.*)  During the plea hearing, and after hearing the summary of the Commonwealth's evidence, Reyes agreed that he was "entering [his] plea without admitting [his] guilt because this is the

---

[2] The Court notes that a great deal of Reyes's Opposition is devoted to arguments about how the Circuit Court denied him the right to his choice of counsel prior to sentencing and somehow that led to Mr. Nord's ineffective representation of him.  Reyes raised that as Claim One, and the Court has already dispensed with that claim.  Therefore, the Court will not consider any argument pertaining to Claim One here.

Additionally, the Court has received letters from Reyes suggesting that he has not received the Respondent's Supplemental Brief.  That is simply untrue, as Reyes's Opposition cites the Supplemental Brief and offers counter arguments to it.

[3] *North Carolina v. Alford*, 400 U.S. 25 (1970).

Commonwealth's evidence and [he did not] want to take the risk that a jury will find [him] guilty." (ECF No. 21–10, at 8.) The Circuit Court found that the "evidence of [Reyes's] guilt [was] overwhelming" and that "it substantially negate[d] the Defendant's claims of innocence." (*Id.*) The Circuit Court then found Reyes's plea intelligently and voluntarily entered and accepted the plea. (*Id.* at 8, 12.)

At this point, Reyes's criminal proceedings diverted from the usual path taken in the state courts. Neither Reyes nor the Commonwealth have aided the Court in providing a fulsome recitation of the procedural history, and the Court is required to conduct a detailed review of the state court record to recount what happened.

The Supreme Court of Virginia aptly summarized what happened after the plea, but prior to sentencing:

> Miguel Antonio Reyes pled guilty to a single charge of robbery, in violation of Code § 18.2–58. After a hearing, the circuit court accepted the plea and found Reyes guilty. It ordered a presentence report and set the case for sentencing in May 2016.
>
> At the May sentencing hearing, Roger G. Nord, Reyes' court-appointed counsel, moved for a continuance so that Reyes could be evaluated for eligibility for the youthful offender program established by Code §§ 19.2–311 through –316. The Commonwealth objected because the victim was present at the hearing to provide victim impact testimony. The court granted a continuance to July 15.
>
> On July 14, Reyes filed a notice and motion through Charles J. Swedish to substitute Swedish as counsel. Reyes asserted that his financial condition had changed because his family had agreed to retain Swedish, so he was no longer indigent. He also sought a continuance pursuant to Code § 19.2–159.1.[4] He repeated these assertions in a separate notice and motion for continuance filed through Swedish the same day.

---

[4] Subsection (B) of the statute provides in relevant part that,

[i]n the event the defendant undergoes a change of circumstances so that he is no longer indigent, the defendant shall thereupon obtain private counsel and shall forthwith advise the court of the change of circumstances. The court shall grant reasonable continuance to allow counsel to be obtained and to prepare for trial.

At the July 15 hearing, the Commonwealth objected to the continuance, noting that the victim was present again in a second attempt to provide impact testimony. The court then asked Swedish why he needed a continuance. Swedish explained that Reyes' family had approached him to take over the case.

*Reyes v. Commonwealth*, 823 S.E.2d 243, 245–47 (Va. 2019) (footnote number altered from original). During the July 15 hearing, Mr. Swedish explained as follows:

MR. SWEDISH: . . . First of all[,] I'm representing a family member and he asked me to look into the case and they want me to take over Mr. Reyes's case. At this late date I wouldn't be doing Mr. Reyes any justice at all if I were to step in merely to do the sentencing today. So I'm making a motion to continue based upon [Code § 19.2–159.1].

It basically is a change of financial circumstances. He had court-appointed counsel before. I believe the Code section says the Court shall grant a reasonable continuance. That's what I'm asking for.

Mr. Miguel Reyes entered an *Alford* plea. It has also been discussed he might want to withdraw that plea—

THE COURT: That's so unlikely as to make it insufficient cause to continue the matter.

MR. SWEDISH: I'm just telling Your Honor why I didn't just start filing things left and right. It wouldn't be appropriate and I'm not prepared for anything and I'm making the motion for the continuance. If that is granted I would ask that my appearance be entered. If not I suppose then the sentencing goes forward today. But I'm basing it on the Code section that says when there is a change of financial circumstances for somebody who is represented by court-appointed counsel the Court shall grant a reasonable continuance. Thank you.

THE COURT: This is to prepare for trial. That's what 19.2–159.1 means. Right, Mr. Swedish? It says trial.

MR. SWEDISH: It says trial and, you know, sometimes they use that word "trial" to mean the day you enter a guilty plea.

THE COURT: I don't think so. I think the legislators know what trial means.

---

When private counsel has been retained, appointed counsel shall forthwith be relieved of further responsibility and compensated for his services, pro rata, pursuant to § 19.2-163.

4

MR. SWEDISH:  And like I said, there is a possibility he might seek to withdraw his plea.

THE COURT:  But if that's the reason[,] I'm concerned about granting a continuance in this.  It's just going to delay matters.  Because it's one thing to delay for the Court to address something.  I just don't find any reasonable cause at this time having gone through what we've gone through for the withdrawal of a plea.

MR. SWEDISH:  And all that I might add is that my client isn't going anywhere.  He has been incarcerated for quite some time.

THE COURT:  It's a burden on the victims.  I gave a first continuance and this is going to be a second continuance.

MR. SWEDISH:  I understand, Your Honor.  That's why I didn't try to force the issue but I brought it to the attention of the Court.

The COURT:  Well, the family is making a decision.  They should note that the Court has no plea agreement on this case.  To the extent of the sentencing guidelines I'm trying to figure out what is an appropriate sentence to impose in this case.  And part of it has to do with the defendant accepting the responsibility and conduct that suggests he would not present a continuing danger to the community, is that right?
So you are aware that some of the actions that he takes can speak to how the Court views how he views his responsibility on this offense.

MR. SWEDISH:  I understand that, Your Honor.

THE COURT:  How much time [do] you need?

MR. SWEDISH:  I would suggest your next sentencing date in August.

THE COURT:  When did the family come to believe that they needed to bring in a lawyer?

MR. SWEDISH:  They spoke to me about three weeks ago and they did not [pay] until quite recently.  And then I filed immediately what I just filed, which was yesterday.

. . . .

5

THE COURT:  Why don't I just allow you to file a motion to reconsider before he is [transferred to] the Department of Corrections?

MR. SWEDISH:  That would be fine.  The burden is [a] little bit higher after sentencing.

THE COURT: I don't think so.  I'm pretty sure the burden is the same because we (inaudible) on sentencing.

MR. SWEDISH:  I understand that and I appreciate Your Honor leaving that option open. I understand [this is] last minute and that's why I alerted the Court and the Commonwealth immediately upon doing this instead of just coming in this morning trying to do this.  It's tough and that's why I didn't want to just start filing things left and right.  It would just not be appropriate and I'm not prepared.
    If that's the case and we go forward today then Mr. Nord will be doing the sentencing and whatever happens, happens subsequent to today.

    . . . .

THE COURT:  Given the Commonwealth's objection, the motion to continue is denied.  I will certainly allow Mr. Swedish to represent the defendant along with Mr. Nord if he wishes to.

MR. SWEDISH:  Well, I have to be in another jurisdiction today later on.  But I'm leaving it up to Mr. Nord.  He is quite prepared for the sentencing.

THE COURT: Thank you.  So Mr. Nord is here.  You can enter your appearance in the case.  I would never prevent that from occurring but the motion for continuance is denied.  If you want to enter your appearance in this case because I'm not doing a substitution at this time.

MR. SWEDISH:  I'm withdrawing that for the moment.

THE COURT:  Thank you, Mr. Swedish.

(July 15, 2016 Tr. 4–9.)  The Circuit Court allowed Mr. Swedish, the attorney retained by

Reyes's family, to withdraw, and Mr. Nord represented Reyes at sentencing.  (July 15,

2016 Tr. 9.)  Mr. Swedish never appeared again on Reyes's behalf and did not file any

motions at any time. The Circuit Court sentenced Reyes to forty-five years of incarceration with all but eighteen years suspended. (*See* ECF No. 21–1, at 2.)

### B.    Motions to Reconsider Filed by Mr. Nord

On August 9, 2016, Mr. Nord, Reyes's original court-appointed counsel, filed a Motion to Reconsider, to Withdraw *Alford* Plea and to Set a Trial Date. (ECF No. 21–4, at 1.) In that motion, counsel explained that

> Throughout the case, the undersigned has had numerous discussions with Defendant as to the circumstances of the case, and whether he would plead, how he would plead, or whether he would proceed to trial.
> Entry of outside counsel [Mr. Swedish] has exacerbated matters as to which course the Defendant chooses to take. At this time Defendant desires to stand trial whatever the consequences may be. He maintains that he is innocent. In all fairness, the Defendant decided *before* the sentencing, through outside counsel, that he would ask to withdraw his *Alford* plea and to request a trial.

(*Id.* at 3 (paragraph numbers omitted).) On September 20, 2016, the Circuit Court denied the motion. (*See* ECF No. 21–5, at 1.) On October 4, 2016, Mr. Nord filed a Supplemental Motion to Reconsider, to Withdraw *Alford* Plea and to Set Trial Date. (*Id.*) Counsel alleged as follows:

> 1.    On August 9, 2016 the Defendant filed the Motion to Reconsider, To Withdraw *Alford* Plea And to Set a Trial Date. The Court denied the Motion by Order entered September 20, 2016.
> 2.    Since then, new information has become available. Defendant's counsel has been able to finally locate an alibi witness and possibly two additional alibi witnesses who will testify as to the Defendant's whereabouts at the time and place of the offense. Defendant therefore submits that he has a valid defense to the charge. In the interest of justice, the case ought to be brought to trial.
> 3.    The availability of witnesses has always been problematic, since the Defendant was unable to assist in locating witnesses; he has been incarcerated without bond the entire time counsel has been appointed to represent him. Mr. Reyes has commonly known the witnesses only by their first names and does not remember or know their specific addresses.

4.      The Defendant has consistently maintained that he is innocent of the charge.  He entered an *Alford* plea, primarily because he was unable to locate the witnesses to corroborate his alibi defense.  Counsel is a court-appointed sole practitioner, who does not have the benefit of a paid investigator to find them.

5.      The newly located alibi witness, Omar Farah, has been incarcerated in the Adult Detention Center on an unrelated case.  Mr. Farah's original affidavit is attached as Exhibit A.  Mr. Farah has also provided the full names of the additional witnesses, Daud Jabril and Janine Suyatt, who are not in custody.  Counsel for Defendant is currently seeking to contact these persons to obtain their affidavits . . . .

(*Id.* at 1–2.)[5]

The Circuit Court held a hearing on the motion on October 7, 2016.  The Circuit Court asked counsel the following:

> THE COURT:  Talk to me about the status of this case.  You understand that I do not have jurisdiction to vacate this conviction.
>
> MR. NORD:  I think on its face value that is correct, Your Honor.  Rule [1:1] prescribes . . . a 21 day period, but I can tell the Court for the record that I did file within the 21 days and I have a stamped copy to prove that I did and hand carried a stamped copy to chambers asking for suspension of the execution of the sentence.
>
> THE COURT:  Which I did not do because the original motion did not tell me why I should do that except that he changed his mind and that was not good enough for me to vacate his *Alford* plea.
>
> MR. NORD:  I understand.
>
> THE COURT:  But your latest motion raises some concerns with the Court.
>
> MR. NORD:  Yes.  That was after discovery [of] evidence, Your Honor.
>
> THE COURT:  How can it be after discovery if he knew that before he entered the plea?

---

[5] Mr. Farah's statement indicated that he was with Reyes at a party on the night of the robbery, June 27, 2015.  (ECF No. 21–6, at 1–2.)  The Court discusses this at greater lengths in Part II.D.3 & 4.

MR. NORD:  Well, he told me that he was other places, but I could not verify with anyone else and that led us to make this considered *Alford* plea.  He always maintained his innocence, but I could not trace any other witnesses and as I pointed out I do not have a staff investigator which has, I believe, led to Your Honor's comment in your order about whether the case should be transferred to the public defender in part for that reason.

THE COURT:  Because Mr. Nord, will there be a habeas coming down the road?

MR. NORD:  I do not know that, Your Honor.  I think that there are some grounds that may justify such an action. . . .

. . . .

MR. NORD:  . . . At this point Your Honor I think the wiser course - - I have spoken with Mr. Reyes and he agrees with me that the witnesses should be located and secured, any additional evidence should be located and secured, and there is a staff investigator with the public defender who is capable of doing that., Your Honor.
That is why I think it would be appropriate to transfer the case to the public defender.  Also, I think, perhaps [there is] a different avenue that they may pursue.  I understand that there is also another avenue with a petition for a writ of actual innocence, and that may or may not lie in this case. . . . Your Honor, but at this point . . . I think it would appropriate to transfer it to the public defender and continue to hold him here for the time being.

. . . .

THE COURT:  If the public defender accepts the appointment.  May I ask the public defenders here in this case. Let the record reflect Ms. Butorac has appeared.  Ms. Butorac --

MS. BUTORAC:  I just wonder what posture this case is, is this post-sentencing?

THE COURT:  Yes.  Well, see this is the issue.  I accepted an *Alford* plea.  I was asked to delay sentencing so counsel who was retained by the family could appear for sentencing.
I denied the motion to continue sentencing because I was not told anything other than somebody else wanted to come in and do sentencing.  We have gone [through the] pre-sentencing investigation report.

We had a sentencing hearing.  I had to continue the matter because I gave Mr. Nord a chance to explore alternative placement, so by the time it came in my pos[session] this case had been sitting on the docket for several months.

A motion for reconsideration was filed within 21 days, but it simply said give the Defendant a chance to have another attorney represent him, so I denied that for that ground.

Beyond the 21 days there is a motion that is filed by Mr. Nord saying that there are alibi witnesses that he was not able to find because as a solo practitioner he did not have access to investigators.

This is a serious offense in which the Court imposed a lengthy period of incarceration for this Defendant based upon his *Alford* plea.  I do not -- I gave Mr. Nord in my order my recitation to that case that explains the Court's jurisdiction and the Court's power.

. . . .

So that question, is the public defender in a position to take a post-sentence case when it is beyond --

MS. BUTORAC:  Your Honor, we have been appointed to do things like motions to reconsider, so perhaps if we were able to find these witnesses we might be able to file a motion to reconsider if he remains at the jail.

We do not do writs of actual innocence.  We do not do habeas.

. . . .

If it is past the thirty days for us to notice an appeal, we could explore the possibility of doing a delayed appeal, but it does not appear that there are necessarily grounds for an appeal if he entered an *Alford* [plea] and has been sentenced.

The motion before the Court is probably barred jurisdictionally for the Court to even hear it.  So I am not sure we can do anything.  Obviously we are more than happy to take it and look at it, but I do not know that there is really anything we can do.

THE COURT:  Well, that is correct that the jurisdiction of this Court can be extended under [Va Code §] 19.2303 but it has to be done very fast. It has to done before he leaves and so I am going to based upon the motion that Mr. Nord has filed it occurs to me that there might be a habeas issue which would cause a conflict, for that reason I would like to impose upon the public defenders to look at this file.

We are all under a time line that I am unwilling [sic] because under the rule of law I just cannot extend it simply because I think that it might be the right thing to do.

MS. BUTORAC:  Your Honor, I just want to put the Court on notice that if we explore and cannot do anything and habeas is the only remedy, we

would have to be filing a motion to withdraw at that point and let the Court
appoint habeas counsel because we do not do habeas.

> The COURT:  That is easy.  That is an easy answer.
> MS. BUTORAC:  Okay.  If we figure out we cannot do anything then
we will be before the Court at that time.  Very well.

(ECF No. 21–7, at 3–9.)  On October 12, 2016, the Circuit Court entered an order

reflecting that it had ordered Mr. Nord, "withdrawn from this case," and that the public

defender had been appointed to represent Reyes.  *Commonwealth v. Reyes*, No. FE–

2016–129, at 1 (Va. Cir. Ct. Oct. 12, 2016).

### C.    Further Proceedings in the Circuit Court and the Belated Appeal

On November 10, 2016, the public defender filed a Motion to Appoint Habeas

Counsel, noting that after discussion, Reyes "expressed his desire to pursue a delayed

appeal . . . and simultaneously pursue a petition for writ of habeas corpus." (ECF

No. 21–8 ¶ 3 (citation omitted)).  The assistant public defender indicated that her office

"ha[d] a conflict with regard to investigation, preparation, and pursuit of a writ of habeas

corpus and [could not] continue its representation of Mr. Reyes in that matter." (*Id.* ¶ 5

(citation omitted).)[6]  The assistant public defender noted that, even if the Circuit Court

would not appoint habeas counsel, Reyes "will pay the cost of the attorney if his petition

is denied . . . ." (*Id.* ¶ 8 (citation omitted).)

On November 18, 2016, the Circuit Court held a hearing on the Motion to Appoint

Habeas Counsel.  The Circuit Court denied the motion and indicated that it "ha[d] no

---

[6] The assistant public defender noted that Reyes "should be appointed an attorney as there is
further investigation and new evidence that is available to be presented at a habeas corpus
evidentiary hearing and this evidence will present a triable issue of fact." (ECF No. 21–8 ¶ 7
(citation omitted).)

authority to appoint habeas counsel" and that "for the purposes of any habeas proceeding[,] the Office of Public Defender [was] withdrawn." *Reyes*, No. FE–2016–129, at 1 (Va. Cir. Ct. Nov. 18, 2016).

Subsequently, through the public defender, the Court of Appeals of Virginia granted Reyes a delayed appeal. *See Reyes v. Commonwealth*, 808 S.E.2d 838, 840–41 (Va. Ct. App. 2018). As summarized by the Supreme Court of Virginia, in his appeal, Reyes asserted

> that the circuit court erred by denying his request for a continuance under Code § 19.2–159.1[7] The Court of Appeals ruled that he was required to demonstrate exceptional circumstances to obtain a last-minute continuance but that he had failed to do so. Accordingly, it concluded that the circuit court did not abuse its discretion by denying his motion and affirmed the judgment. *Reyes v. Commonwealth*, 68 Va. App. 379, 387-89, 808 S.E.2d 838 (2018).

*Reyes v. Commonwealth*, 823 S.E.2d 245, 247 (Va. 2019) (footnote number altered from original). On February 21, 2019, the Supreme Court of Virginia affirmed the decision of the Court of Appeals of Virginia. *Id.* at 249.

Despite clearly being aware that he could file a habeas petition in the state court and indicating that he would hire an attorney to do so, Reyes never pursued a petition for writ of habeas corpus in state court. On May 29, 2020, Reyes filed the present § 2254

---

[7] Reyes also asserted that the circuit court violated his Sixth Amendment right to counsel. The Court of Appeals noted that he had not made that argument to the circuit court. It ruled that the issue had not been preserved for appeal under Rule 5A:18 and declined to consider it. *Reyes v. Commonwealth*, 68 Va. App. 379, 390, 808 S.E.2d 838 (2018). We refused Reyes' assignment of error challenging that ruling.

Petition.[8] In his remaining Claim Two, Reyes suggests trial counsel was ineffective

based on the following:

> On October 7, 2016, Mr. Nord, [Reyes's] attorney appeared before Judge Tran, court admitted that his motion raise[d] some concerns by the courts. Mr. Nord acknowledged that his investigation was inadequate and prevented him from pursuing a vigorous defense for [his] client. Mr. Nord explained, well his client told him, he was at other places, his attorney claims he could not verify his whereabouts, Reyes maintained his innocence, his attorney could not trace any other witnesses and he had no staff investigator. Explaining his failings as court-appointed counsel, Mr. Nord conceded that his representation may qualify as ineffective assistance of counsel. Mr. Nord was instructed to handle all motions, petitions, and continuance[s]. Nord told the judge he did [not] know if he would assist Reyes. Reyes appeal[led] for new representation. However, the Court of Appeals did not conduct a plain language analysis. The Court of Appeals [failed] to find that the trial court erred in denying the continuance.

(ECF No. 1, at 13–15; *see also* ECF No. 1–1, at 2–5, ECF No. 16, at 11–12, 18–19.) It is

not entirely clear what Reyes intends to argue in Claim Two. However, based on the

underlying facts, the Court believes that Reyes may suggest that he received ineffective

assistance in conjunction with his decision to enter an *Alford* plea. As discussed below,

Claim Two is defaulted and barred from review here.

## II.    EXHAUSTION AND PROCEDURAL DEFAULT

### A.    Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the

prisoner must first have "exhausted the remedies available in the courts of the State." 28

U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state

---

[8] Because Reyes failed to use the standardized form for filing a § 2254 petition, he did not swear to the date he placed his petition in the institutional mailbox for mailing to the Court. The envelope indicates that it was postmarked on May 29, 2020. (ECF No. 1–4, at 1.) The Court uses this as the filed date. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a

14

"state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[9] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[9] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

**B.     Claim Two is Barred From Review Here**

Reyes never filed a state habeas petition.  Therefore, this claim is certainly unexhausted.  However, Respondent also argues that this claim is now defaulted because Reyes could have raised, but failed to raise, this claim in a state habeas petition, and now it would be barred under the Virginia statute of limitations, Va. Code Ann. § 8.01–654(A)(2).[10]  Va. Code Ann. § 8.01–654(A)(2) constitutes an adequate and independent procedural rule when so applied.  *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006).  Thus, Claim Two is procedurally defaulted unless Reyes can demonstrate cause and prejudice for his default or that a fundamental miscarriage of justice occurred.

**C.     Reyes's Vague Assertion of Cause**

"[C]ause" to excuse a procedural default refers to "some objective factor external to the defense [that] impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule . . . or that some interference by officials, made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted).  Although Reyes seemingly suggests in his § 2254 Petition that he filed a state habeas petition, he quite clearly did not.  In a prior response, Reyes admitted

---

[10] This statute provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2022).

that he only pursued his federal § 2254 Petition and did not seek collateral review in the

state courts. (*See* ECF No. 16, at 5–6.)  Reyes attempted to blame the Lawrenceville

Correctional Center for providing him with a form for filing a federal § 2254 petition as

opposed to a state habeas petition form as the reason he did not seek collateral review in

the state courts. (*Id.* at 2–6, 21.)  However, the standardized form for filing a § 2254

petition clearly provides at the top of the form that the form is for the United States

District Court for the Eastern District of Virginia, not for the Virginia state courts.  Reyes

does not suggest that he mistakenly sent the federal form to the state courts or any other

allegation that would make this contention more credible.  Even more curiously, despite

stating that he was provided with the § 2254 petition forms instead of the state forms,

Reyes's § 2254 Petition was *not filed* on the standard forms but is entirely handwritten.

In sum, this vague, unsubstantiated, allegation is insufficient to establish cause for the

default of Claim Two.

Moreover, the record establishes that Reyes clearly was aware that he should file a

habeas petition in the state courts but did not.  Prior to sentencing, the Circuit Court

appointed the public defender to look into several potential avenues to attack his *Alford*

plea, including a potential habeas petition.  When the assistant public defender indicated

that her office had a conflict and could not file a habeas petition on Reyes's behalf, she

filed a Motion to Appoint Habeas Counsel, and the Circuit Court had a hearing on the

matter. (ECF No. 21–8, at 1–2).  The assistant public defender represented to the Circuit

Court that Reyes had told her that he intended to pursue a belated appeal and a habeas

petition at the same time. (ECF No. 21–9, at 8–9.)  The assistant public defender also

indicated to the Circuit Court that even if the Circuit Court would not appoint habeas

counsel, Reyes plans on "pay[ing] the costs of the attorney if his petition is denied

regardless." (ECF No. 21–8 ¶ 8 (citation omitted).)  The Circuit Court subsequently

denied the Motion to Appoint Habeas Counsel because it believed that it lacked authority

to appoint counsel. (*See* ECF No. 21–9, at 9–10.)  However, despite indicating his

apparent willingness to hire counsel to file a habeas corpus proceeding in state court,

Reyes failed to pursue a habeas petition in state courts either by counsel or *pro se*.  In

sum, Reyes's own inaction, not "some objective factor external to the defense," resulted

in the default of this claim. *Murray*, 477 U.S. at 488; *see Coleman*, 501 U.S. at 753

(explaining that "'cause' under the cause and prejudice test must be something *external*

to the petitioner, something that cannot fairly be attributed to him" (emphasis in

original)).  Accordingly, Reyes fails to demonstrate any cause for the default of Claim

Two.[11]

Respondent also argues that *Martinez v. Ryan*, 566 U.S. 1 (2012),[12] fails to serve

as cause for the default of Claim Two.  Here, as just explained, Reyes never pursued any

collateral proceedings in state court.  Thus, *Martinez* is inapplicable to his claims and

does not establish cause for the procedural default of this claim.  *See Walton v. Ray*,

No. 3:17CV474, 2018 WL 2978022, at *3 (E.D. Va. June 13, 2018) (citing *Pullen v. Dir.,*

---

[11] Because Reyes has failed to demonstrate any cause, the Court is not obliged to address the
issue of prejudice. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

[12] In *Martinez*, the United States Supreme Court explained that ineffective assistance of counsel
or the lack of counsel "at initial-review collateral proceedings may establish cause for a
prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at
9.

*Va. Dep't of Corr.*, No. 7:14CV211, 2015 WL 159533, at *3 (W.D. Va. Jan. 13, 2015);

*Anderson v. Clarke*, No. 2:13CV223, 2014 WL 1203032, at *5 (E.D. Va. Mar. 24, 2014))

("*Martinez* analysis is inapplicable where the criminal defendant did not initiate any state

collateral review proceeding whatsoever." (quoting *Jones v. Pa. Bd. of Prob. & Parole*,

492 F. App'x 242, 246–47 (3d Cir. 2012))), *appeal dismissed*, 744 F. App'x 828 (4th Cir.

2018); *see also Shinn v. Martinez Ramirez*, -- S. Ct. ---, No. 20–1009, 2022 WL 1611786,

at *7 (U.S. May 23, 2022) (citation omitted) (explaining that "to allow a state prisoner

simply to ignore state procedure on the way to federal court would defeat the evident goal

of the exhaustion rule"). Thus, *Martinez* also fails to excuse Reyes's default of Claim

Two.

The only avenue remaining to excuse Reyes's default of his claim of ineffective

assistance of counsel is whether "he falls withing the 'narrow class of cases . . .

implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 315

(1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Although Reyes never

argues with any great detail that his actual innocence should excuse the default of his

claim, the record suggests that such an inquiry is appropriate.

### D.     Actual Innocence

The actual innocence inquiry here is particularly challenging because by entering

an *Alford* plea, Reyes always maintained his innocence. *See North Carolina v. Alford*,

400 U.S. 26 (1970) (recognizing that defendant may plead guilty while maintaining

innocence). Although Reyes argues that he is innocent, his arguments are comprised of

bare and conclusory assertions that he is actually innocent. In his Opposition, Reyes

argues that there were "multiple alibi witnesses that counsel failed to find that would have proven Petitioner's innocence or at the very least would have raised reasonable doubt in a jury." (*Id.* at 4.) However, although Reyes insists that there were multiple alibi witnesses available, he fails to proffer any sworn statements from these alleged witnesses along with his § 2254 Petition. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory information); *Weeks v. Bowersox*, 119 F.3d 1342, 1351–53 (8th Cir. 1997) (concluding that mere allegations that exculpatory evidence exists are insufficient to raise a colorable claim of actual innocence). Rather, Respondent found the statement of Mr. Omar Farah in the state court record and attached it to its Supplemental Motion to Dismiss. (*See* ECF No. 21–6, at 1–3.) Thus, Reyes fails to make a convincing claim of his innocence, and the inquiry could stop here. *See Weeks*, 119 F.3d at 1353–54 (explaining that failure to present evidence is fatal to actual innocence claim). Nevertheless, because the sworn statement of an alleged alibi witness exists, the Court finds it prudent to examine whether Reyes would have a meritorious claim of actual innocence if he properly attached that sworn Farah's statement to his § 2254 Petition.

### 1.  Standard of Review for Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). The Court reviews Reyes's Motion under the more lenient standard for gateway actual innocence claims, because subscribing to Reyes's actual innocence claim would permit the Court to

consider the merits of his otherwise procedurally defaulted ineffective assistance of counsel claim.

A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09CV659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks*, 119 F.3d at 1352–53; *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted) (internal quotation marks

21

omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

### 2. Summary of Reyes's Guilt

As the proffer for Reyes's guilty plea, the Commonwealth summarized the evidence as follows:

> Had this case gone to trial the Commonwealth's evidence would have shown that on June 27th of 2015, officers with the Fairfax County Police responded to a robbery call at the home of Mariella Velaquez Grenados.
> Upon their arrival, officers met with the victim who advised that she had been robbed at gunpoint in her apartment. Mariella was in her apartment where her five year old son was asleep when she heard a knock at the door. When she opened the door, two individual[s] walked into the apartment putting a gun to her head.
> One of the individuals started telling Mariella to give them her money and pushed her to the ground. She agreed to give them her money and gave $650 in currency. The suspects also took her cell phone off of her bed. Prior to leaving the apartment, one of the suspects told Mariella that if she told anyone, he knew where she lived. The suspects then fled. Mariella gave a description of the suspects and later did a photo line-up where she identified this Defendant, Miguel Reyes, as one of the involved parties.

(ECF No. 21–10, at 7.) Furthermore, during a preliminary hearing held on February 2, 2016, the victim, Grenados, testified about the robbery. Grenados explained that the robbery occurred, "at night, close to ten - 10:30." (Feb. 2, 2016 Tr. 11.) Grenados testified that "in the very beginning the man that put the gun to my head was speaking in English and the other one that's here in front, that I can identify him clearly, was translating for him what he wanted to say to me [in Spanish]." (Feb. 2, 2016 Tr. 5.) Grenados testified that the man with the gun told her to get on the floor "and the other one is saying to me to give him the money in Spanish." (Feb. 2, 2016 Tr. 5.) Grenados further said that, when the men left, the man speaking Spanish "told me he would come

back if I opened my mouth." (Feb. 2, 2016 Tr. 6.) Grenados also testified that several

days later she saw both the robbers in her neighborhood. She explained as follows:

> A few days later I went to the park where I normally take my son. I saw one of them, the one that pointed the gun to my head.
> Some days later I went to take the trash out . . . and I saw this man (Indicating) and I was convinced that it was him, more than the other one. I recognized this one more than the one that put the gun to my head because he spoke in Spanish.

> Q:    Now Mariella, you're talking about two people that were there that day.

> A:    Yes.

> Q:    Do you see one of them in the courtroom today?

> A:    Yes, yes that guy that's there. (Indicating)

> Q:    Okay. Can you, just so the judge is clear, can you tell the judge what he's wearing, the man you are talking about?

> A:    He has green on.
>    . . .

> THE COURT:    Let the record reflect the witness has identified the defendant seated at the table with counsel.

(Feb. 2, 2016 Tr. 7–8.)

After Reyes heard the testimony of the victim and the Commonwealth's summary

of the evidence during the plea hearing, Reyes determined that the Commonwealth's

evidence was sufficient to prove that he was guilty beyond a reasonable doubt. The

Circuit Court asked Reyes whether he was "entering [his] plea without admitting [his]

guilt because this is the Commonwealth's evidence and [he did not] want to take the risk

that a jury will find [him] guilty?" (ECF No. 21–10, at 8.) Reyes responded in the

affirmative. (*Id.*) The Circuit Court found that the "evidence of [Reyes's] guilt [was]

overwhelming" and that "it substantially negate[d] the Defendant's claims of innocence." (*Id.*) The Court found that Reyes "intelligently concluded that is in his best interest to enter the *Alford* plea of guilty." (*Id.*) Before the Court accepted the plea, Reyes's counsel pointed out that the Commonwealth had agreed to *nolle prosequi* the additional firearm charge and agreed that it would not indict Reyes for another count of robbery. (Feb. 23, 2016 Tr. 12.)

### 3.   Reyes's "New" Evidence of Innocence

As discussed previously, Reyes did not supply any alleged alibi witness statements with his § 2254 Petition. Rather, Respondent provided the sworn statement from one of these witnesses, Mr. Omar Farah, that was submitted to the Circuit Court. (*See* ECF No. 21-6.) In this statement, Mr. Farah, indicates that Reyes was with him at a party on the night of the robbery. In his Opposition, Reyes addresses this sworn statement for the first time and attempts to establish an alibi.[13] This sworn statement was first produced on October 4, 2016, and was filed with Reyes's Supplemental Motion to Reconsider, to Withdraw *Alford* Plea and to Set Trial Date in the Circuit Court. (*See* ECF No. 21-6.) Despite the statement being available, it does not appear that the Circuit Court ever considered the contents of the statement. Mr. Farah stated as follows:

> At around 8:40ish leading towards 9pm, I took an Uber to a party in Springfield, VA. I was invited by a female friend I've seen at a previous house party. Within an hour of being there, possibly a little less, I saw my friend Miguel [Reyes] enter the party with 3 of my other friends: Daud, Bilal, and Janine. This stood out to me for two reasons, one being that I haven't seen Miguel for months, and two being that Daud is my closest friend and I had no recollection of them knowing each other. I approached them saying

---

[13] Reyes argues that he could not have attached this sworn statement to his § 2254 Petition because it "is part of the record" and he "does not currently have a copy of it." (ECF No. 30, at 9.)

what's up and asking how they got there. Miguel told me his friend Moe gave him a ride. I then asked him how he knew Daud. He began to explain to me how they had met. He told me before the party he was at the McDonald's off Little River and Beauregard with Bilal and Moe. Miguel told me Moe drove off with Bilal as he was still in the McDonald's. He called Bilal, and Bilal told him he thought Miguel was in the backseat which was funny to me. They came back to pick Miguel up and then went to pick up Janine, a friend of mine and Daud, who lives close to us in Annandale. When they picked her up she asked them to pick up Daud, who lives right up the street on Little River before going to the party. They picked him up and proceeded to the party where they had met me. This was the first time they had hung out together and I don't believe they hung out again after this night. We all partied and talked to girls throughout the night and went our separate ways towards the end of the party. At about 12:00 midnight, I got a ride with a girl I knew and went home. It would be almost a year before ever seeing Miguel again when I had got arrested. I got arrested May 11th, 2016 and seen him in jail later on that month. I heard he got arrested through different people but nobody really knew why. This is what I remember from the night of June 27th, 2015 and the events leading towards Miguel's arrest.

(ECF No. 21–6, at 1–3.)

### 4.   The Credibility of Reyes's Evidence

The Supreme Court has explained that to be credible, three types of "new reliable evidence" may support a petitioner's allegations of innocence. *Schlup*, 513 U.S. at 324. These include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* Reyes's actual innocence claim is not accompanied by "exculpatory scientific evidence" or "critical physical evidence" not presented at trial. *Id.* And, as discussed below, Mr. Farah's sworn statement in support of his innocence is not a "trustworthy eyewitness account[]."[14]

---

[14] The Court also doubts that the evidence should be considered "new." Reyes knew about Mr. Farah and other potential alibi witnesses prior to the entry of his plea, but counsel had been unable to locate them because, according to counsel, Reyes only knew the witnesses by their first names. (*See* ECF No. 21–5, at 3.) The sworn statement of Mr. Farah was clearly available to Reyes as of October 4, 2016, when it was filed with the Circuit Court. At this time, Reyes's conviction was not final, as he was later granted a belated appeal. Moreover, Reyes had the

a.   **The Evidence Is Not a Trustworthy Eyewitness Account**

Reyes fails to satisfy the requirement that the new evidence must be reliable.

*Schlup*, 513 U.S. at 324. First, Reyes obtained this sworn statement from Mr. Farah

when they encountered each other in jail in October 2016. The Court has serious doubts

about the credibility of Mr. Farah's statement. The Supreme Court has instructed that

> when considering an actual-innocence claim in the context of a request for
> an evidentiary hearing, the District Court need not "test the new evidence by
> a standard appropriate for deciding a motion for summary judgment," but
> rather may "consider how the timing of the submission and the likely
> credibility of the affiants bear on the probable reliability of that evidence."

*House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 331–32). The sworn statement that

Reyes produced as evidence lacks the ring of truth. Mr. Farah's statement was made only

after Reyes happened to be housed in the same jail as Mr. Farah. The sheer fact that Mr.

Farah has, at the very least, been arrested and detained casts doubt on the reliability of his

testimony. Moreover, the robbery occurred on July 27, 2015. Mr. Farah's sworn

statement was made on October 3, 2016, more than fourteen months after the robbery.

Mr. Farah fails to provide any information about how he was certain that he was at a

party with Reyes on the night that the robbery occurred or that his timing was correct.

---

sworn statement and could have pursued his claims of innocence in the state court. Reyes knew
that he could file a state habeas petition, but he did not avail himself of that option. Reyes also
could have filed a writ of actual innocence, but he did not pursue such a writ. Simply put, this
evidence is not "new" for the purposes of an actual innocence query.

    However, the Court is aware that "[s]ome circuits require the petitioner to present 'never
discovered' evidence as opposed to evidence that is merely 'newly presented.'" *See Dick v.
Muse*, No. 3:10CV505, 2014 WL 4854689, at *2 & n.3 (E.D. Va. Sept. 29, 2014) (citations
omitted). Although Mr. Farah's statement was filed with the Circuit Court, its contents were not
considered. Because this Court is the first to review the statement's contents, it arguably could
be considered "newly presented." *See id.* at n.3. In an abundance of caution, the Court will
deem the statement "newly presented" and will consider it. Nevertheless, Reyes fails to satisfy
the requirements for a gateway claim of actual innocence for several other reasons.

Additionally, Mr. Farah's statement about Reyes's whereabouts before the party is likely hearsay. Nevertheless, despite the Court's doubt about the reliability of this sworn statement, even considering this new evidence along with the evidence presented in Reyes's criminal proceedings, any reasonable juror would have found Reyes guilty if he had not pled guilty and proceeded to trial. *Sharpe*, 593 F.3d at 377.

### b.    Consideration of All the Evidence

If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe*, 593 F.3d at 377 (quoting *Schlup*, 513 U.S. at 327–28). Based on the total evidentiary record, the Court must "make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538.

Moreover, the actual innocence inquiry also "unequivocally requires that reviewing courts consider a petitioner's claim in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial." *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (citing *Schlup*, 513 U.S. at 324); *see id.* (explaining that

"[i]ntegral to *Schlup*'s holding is an express command that reviewing courts consider *all* evidence without regard to its admissibility"). In assessing Reyes's showing of actual ⸳ innocence, "the district court is not bound by the rules of admissibility that would govern at trial." *Id.* (quoting *Schlup*, 513 U.S. at 324). "This is because, at the gateway stage of inquiry, a habeas court's task is not to identify trial error or to delineate the legal parameters of a possible new trial. It is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free from constitutional error." *Hyman v. Brown*, 927 F.3d 639, 658 (2d Cir. 2019).[15] Additionally, "given the emphasis the Supreme Court has placed on assessing actual innocence claims in light of 'all the evidence . . . without regard to . . . admissibility,' [the Court should] not interpret its reference to 'properly instructed jurors' as a limitation on the evidence to be considered by the court." *Id.* (quoting *House*, 547 U.S. at 538). Because "acceptance of a claim of actual innocence from someone previously adjudicated guilty represents an extraordinary form of relief, the scope of pertinent evidence is expansive." *United States v. Fugit*, 703 F.3d 248, 256–58 (4th Cir. 2012) (explaining that facts contained in a presentence report, conceded to by defendant in open court and used by trial judge as a basis for sentencing, are firmly within realm of admissible evidence).

---

[15] For example, the Second Circuit explained that this means that "incriminating evidence obtained in the course of an unlawful search, or custodial admissions made in the absence of *Miranda* warnings may well be inadmissible at trial. Nevertheless, such evidence is properly considered in assessing factual innocence, with the manner of procurement informing reliability and relevance, and therefore, weight." *Hyman*, 927 F.3d at 658.

The victim, Mariella Grenados, was unequivocal in her identification of Reyes as one of the two people who robbed her.[16] Reyes lived in the building that connected to Grenados's building in the same apartment complex.[17] Days after the robbery, Grenados saw Reyes again in her apartment complex and knew he was the robber. Grenados gave a description of the two robbers to the police and then later identified Reyes in a police lineup. Grenados clearly and decisively identified Reyes as the robber in the courtroom. She indicated that she was sure that Reyes was the man who robbed her because he was translating in Spanish for the man who had the gun, and because he was speaking directly with her, so she remembered him more distinctly.[18] The victim's testimony, according to the Virginia Circuit Court, proved Reyes's guilt beyond a reasonable doubt. Reyes heard the victim's unequivocal testimony that he was the robber, and he likely realized that any reasonable juror would determine that he was guilty. Reyes even confirmed this through his explicit statement under oath that the victim's testimony was sufficient to prove that he was guilty beyond a reasonable doubt.

Compared to the victim's decisive identification of Reyes as the man who robbed her, Mr. Farah's alleged alibi statement is less precise. In his sworn statement, Mr. Farah states that he got into an Uber to go to the party close to 9 p.m. Mr. Farah provides no

---

[16] The Court cannot find the name of the other robber in the record. At most, in a letter from a doctor who treated the victim, the doctor states that the victim identified the robber with the gun as a "Persian-looking person who robbed her house." Letter from Antonio Ramada, M.D., P.C, *Commonwealth v. Reyes*, FE–2016–0000129 (Va. Cir. Ct. dated May 2, 2016).

[17] The Court easily deduced this fact from the Circuit Court records.

[18] From its own review of the state court record, the Court notes that Reyes hardly looks like every other individual on the street. Reyes was five foot three, weighed 140 pounds, and had extremely long hair and a mustache.

information about how long that Uber ride was to the party. According to Mr. Farah,

Reyes arrived at the party approximately an hour later. The victim explained that the

robbery occurred, "at night, close to ten - 10:30." (Feb. 2, 2016 Tr. 11.) It is unclear

from Mr. Farah's sworn statement whether Reyes arrived at the party before this time,

around this time, or after this time. Thus, Mr. Farah's sworn statement does not preclude

Reyes from committing the robbery and then subsequently attending the party. Although

Mr. Farah recounts a story that Reyes told him about his whereabouts prior to the party,

this is mere hearsay, and Mr. Farah is not competent to testify as to this information. *Cf.*

*Herrera v. Collins*, 506 U.S. 390, 417–18 (1993) (rejecting affidavits based on hearsay as

"particularly suspect" in an actual innocence inquiry). Even if the Court were to consider

Mr. Farah's account that Reyes had gone to McDonald's before the party, the

McDonald's restaurant that Reyes apparently visited was a half a mile away, and a mere

four minute drive from the apartment complex where both the victim and Reyes lived.

Therefore, Reyes could have easily been at both McDonald's and the victim's home

within a very short time period.

Mr. Farah's statement must be considered in light of the evidence of Reyes's guilt

that formed the basis for the plea. The victim unequivocally and consistently identified

Reyes as the robber. Mr. Farah's statement merely places Reyes at a party the night of

the robbery, and, at most, shows that Reyes may have a potentially defensible case.

Accordingly, although it may have probative value if offered at trial, in evaluating

Reyes's current claim of innocence, any reasonable juror would give substantial weight to the victim's testimony, over the testimony of Mr. Farah.[19]

Moreover, Reyes's claim of actual innocence is seriously undermined by the entry of his *Alford* plea and the circumstances surrounding it. *Smith v. Warden*, No. 7:17CV72, 2018 WL 3130948, at *2–3 (W.D. Va. June 26, 2018) (citations omitted); *see id.* at *3 (explaining that habeas court "must consider petitioner's guilty plea in determining whether [he] can meet the *Schlup* standard" (citation omitted)). The victim was the only person who testified as to Reyes's guilt. Had Reyes chosen to proceed to trial and testify, only Reyes and the victim would have been able to testify firsthand about the robbery. The jury would have weighed the credibility of the two. However, at no time prior to or during the guilty plea hearing did Reyes attempt to contest his guilt. Clearly, Reyes was not confident in his alleged alibi.[20]   Instead, Reyes agreed in open court that the record established "strong evidence of actual guilt" and knowingly and voluntarily decided to enter an *Alford* plea. *See Alford*, 400 U.S. at 37; *Nielson v. Clarke*, No. 7:19cv657, 2020

---

[19] Noticeably absent from Reyes's claim of innocence is his own account of the evening which would have bolstered the statement of Mr. Farah and furthered any alibi defense. If Reyes was not one of the two individuals who robbed the victim and was instead out with friends and at a party at the time of the robbery, the Court fails to understand why Reyes would not specifically say so in his own statement. Although Reyes is not required to provide his own sworn testimony, he *is* required to convince this Court that he is factually innocent. With Mr. Farah's statement as his only evidence of his innocence, Reyes has failed to do so.

[20] Reyes was aware of his alibi at that time. Therefore, Mr. Farah's statement "does not change the overall picture of the case available" at the time Reyes's chose to accept an *Alford* plea rather than risk a trial. *See Nielson v. Clarke*, No. 7:19cv00657, 2020 WL 5648133, at *4 (W.D. Va. Sept. 22, 2020) (finding no actual innocence with regard to an *Alford* plea because defendant "voluntarily made a choice to plead guilty, while maintaining his innocence," to secure a lesser sentence).

WL 5648133, at *4 (W.D. Va. Sept. 22, 2020) ("Recognizing that the evidence was sufficient to support a conviction, if rendered by a jury, Nielson chose to enter a guilty plea even as he maintained his innocence.")  Given his plea, and his prior sworn admission in his plea "that, while [he was] not admitting guilt, [he was] admit[ting] that the evidence against [him was] overwhelming and substantially negates any claim of innocence [he] may have," (ECF No. 21–11, at 1), Reyes "fails to carry the heavy burden of 'show[ing] it is more likely than not that no reasonable juror would have convicted him.'" *Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (citations omitted) (rejecting actual innocence argument in light of a petitioner's guilty plea and "his failure to address other evidence that contributed to his plea").[21]  Only after his family retained new counsel did Reyes suddenly wish to recant his admission under oath that the evidence overwhelmingly negated his claim of innocence;[22] however, no reasonable juror would give credence to his current assertion of innocence given all of the evidence.

Reyes's current suggestion that he is actually innocent is also undermined by other evidence in the state court record. *Cf. Fugit*, 703 F.3d at 256–58 (considering evidence from presentence report and used as a basis for sentencing within realm of evidence the habeas court can consider in actual innocence inquiry).  Prior to his sentencing, Reyes

---

[21] Contrary to Reyes's current suggestion, "[e]ntry of a plea is not some empty ceremony, and statements made to a . . . judge in open court are not trifles that defendants may elect to disregard.  A defendant has no legal entitlement to benefit by contradicting himself under oath.  Thus[,] when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

[22] Reyes also fails to offer any information about why his family decided to retain new counsel after he had already pled guilty and so late into his criminal proceedings.

had a friend submit a letter with respect to his character in hopes of a more lenient sentence. This letter does not sound in Reyes's innocence. The friend wrote: "I know that Miguel is aware of all the wrongs he has and has not committed. I know he is truly sorry for any troubles he has caused. All his family and friends ask for is to please let Miguel use this as a learning experience . . . ." Letter Attached to Presentence Report. During the sentencing hearing, the Commonwealth also presented evidence that the "Sheriff's office has validated that [Reyes] is a member of the MS-13 gang" and additionally, that "while in jail awaiting sentencing [Reyes's] has had five disciplinary actions [filed] against him," including three charges for fighting and one for assault. (July 15, 2016 Tr. 11.)

Further, the record does not reflect that, at the time of Reyes's arrest on the armed robbery, this was his first brush with the law. Rather, Reyes was a gang member who was clearly familiar with a life of crime. Reyes had amassed an extensive criminal history for a nineteen-year-old. Whether or not this information would be admissible at trial is not the inquiry for this Court at this time, rather the Court must base its "probabilistic determination about what reasonable, properly instructed jurors would do" on the "total record." *House*, 547 U.S. at 538 (citation omitted). Once again, considering all of the evidence, including the victim's testimony, Mr. Farah's statement, Reyes's criminal history, and his statements under oath that the evidence was more than enough to convict him, Reyes fails to demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Sharpe*, 593 F.3d

33

at 377 (quoting *Schlup*, 513 U.S. at 327–28). Therefore, Reyes has failed to demonstrate

his actual innocence or that a miscarriage of justice has occurred.[23]

---

[23] For similar reasons, even if the Court determined that Claim Two was not defaulted, Reyes has not demonstrated any prejudice from counsel's failure to obtain statements from these alleged alibi witnesses prior to the entry of his plea. In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Reyes that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

In Claim Two, Reyes seemingly faults counsel for failing to obtain witness statements before the entry of his *Alford* plea. First, and entirely fatal to the claim, Reyes never states that, but for counsel's failure to obtain these statements, he would have refused to enter an *Alford* plea and would have instead gone to trial. Moreover, the record demonstrates that this was not true. Any reasonable juror would have believed the victim's unequivocal identification of Reyes as the robber. Reyes clearly heard the evidence against him and understood that this evidence was more than sufficient to obtain his conviction of robbery. Reyes's decision to enter a guilty plea but maintain his innocence was "a voluntary and intelligent choice" based on "the information known and options open to the defendant." *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (quoting *Alford*, 400 U.S. at 31). Moreover, the one witness statement Reyes obtained and has proffered offers a thin alibi defense when compared with the unwavering identification of Reyes by the victim.

Additionally, in exchange for his *Alford* plea, the Commonwealth agreed to *nolle prosequi* the firearm charge and an additional unrelated robbery charge. Reyes received a forty-five-year sentence, with all but eighteen years suspended, for one robbery charge. Clearly, the Circuit Court was convinced of the severity of the home invasion with a firearm and the robbery of the victim who was home with her child. Reyes certainly would have received a significantly lengthier sentence from an additional firearm conviction or a second unrelated robbery conviction which carried a sentencing range of up to life imprisonment. (*See* ECF No. 21–10, at 10.) Accordingly, no reasonable defendant would have taken the risk of going to trial in light of the compelling evidence of his guilt, and the sentencing benefit he received from the dropped charges. Reyes made a calculated decision to enter an *Alford* plea and maintain his innocence but receive the benefit of two dropped charges. Reyes fails to demonstrate any prejudice from counsel's actions.

### III.   CONCLUSION

For the foregoing reasons, Respondent's Supplemental Motion to Dismiss (ECF

No. 21) will be granted.  The § 2254 Petition will be denied, and the action will be

dismissed.  A certificate of appealability will be denied.

An appropriate Order shall accompany this Memorandum Opinion.

_____/s/_____

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: June 14, 2022
Richmond, Virginia